IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMES E. SPARENBERG | * | |
| v. | * | Civil No. JFM-14-1667 |
| EAGLE ALLIANCE d/b/a Computer Science Corporation | * | |

## MEMORANDUM

Pending before this court is a motion for reconsideration of a partial denial of defendant Eagle Alliance's summary judgment motion. (ECF No. 36). The issues have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion is denied.

## ANALYSIS

Generally, a motion for reconsideration "may be granted when there is an intervening change of controlled law, there is new evidence or an expanded fact record, or there is a need to correct clear error or prevent manifest injustice." *Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 356 n.2 (D. Md. 2015) (internal quotation marks and citations omitted). Of course, a motion for reconsideration is "not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (internal citations and quotation marks omitted). Here, Eagle Alliance contends this court must reconsider its decision to "prevent manifest injustice." (ECF No. 45, p. 4). Eagle Alliance argues the court erred on two grounds: (1) finding that the statute of limitations had not run on Sparenberg's FMLA claims; and (2) finding that attendance was not a justifiable occupational

1

qualification supporting Sparenberg's transfer. Because the court previously considered, and rejected Eagle Alliance's arguments, and Eagle Alliance fails to proffer any new binding authority, Eagle Alliance's motion is denied.

### A. This court did not err in finding the statute of limitations had not run on Sparenberg's FMLA claims.

Generally, a plaintiff must bring a FMLA claim within two years "after the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1). At issue is what event constituted the "last event constituting the alleged violation." In his complaint, Sparenberg asserts two claims under the FMLA—one for interference and one for retaliation—against Eagle Alliance. For both claims, Sparenberg cites as evidence his removal from his NSOC post on April 21, 2012 (outside the two-year statute of limitations period) and the reduction in his salary on June 22, 2013 (inside the two-year statute of limitations period). This court concluded that, because the two events were linked, "the last event constituting the alleged violation," *i.e.*, the reduction in salary, fell within the FMLA's two-year statute of limitations period. (*See* ECF No. 42, p. 7). Eagle Alliance disputes this reading of the law, citing a host of cases for the proposition that a "cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." (ECF No. 45, p. 5) (citations omitted). Where Eagle Alliance errs, however, is that most of its cited authority concerns Title VII and is thus, inapplicable to the instant FMLA claims.[1]

While FMLA claims are often "analogous to those derived under Title VII," *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 547 (4th Cir. 2006), grafting Title VII's statute of

---

[1] For example, Eagle Alliance characterizes *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307 (4th Cir. 1998) as "binding case law." (ECF No. 48, p. 10). This is an inaccurate characterization—*Martin* concerned a statute of limitations under the Americans with Disabilities Act ("ADA"), which incorporates Title VII's statute of limitations. As noted, there is a material difference between the two statutes of limitations.

limitations law onto the FMLA is inappropriate because there is a critical difference between Title VII's and the FMLA's statutes of limitations.  Title VII's statute of limitations beings running "after the alleged unlawful employment practice occur[s]," 42 U.S.C. § 2000e-5(e)(1); by contrast, the FMLA's statute of limitations begins running only after "the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1).  Therefore, while under Title VII, the "statute of limitations begins to run when . . . the plaintiff can file suit and obtain relief," *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013), under the FMLA, the statute of limitations begins to run only after "the *last* event constituting the alleged violation." *See Butler v. Owens-Brockway Plastics Products, Inc.*, 199 F.3d 314, 317 (6th Cir. 1999) (holding that where a plaintiff was terminated, in part, for taking FMLA-protected leave, the last event constituting the alleged violation was the termination, and not previous reprimands for taking FMLA leave).[2]  The plain language of the FMLA's statute indicates Congress contemplated violations of the statute possibly encompassing multiple events.  Here, the transfer and decrease in pay are properly considered one violation because the two events are inexorably linked: that is, Sparenberg's transfer led to his decrease in pay.  (*See* ECF No. 39, Ex. 7, 99:2–5).  Thus, this court did not err in finding the subsequent decrease in pay fell within the two-year FMLA statute of limitations.[3]

---

[2] I recognize the Seventh Circuit's decision in *Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893 (7th Cir. 2015), issued after the summary judgment order here, holds otherwise.  However, I find the rationale of *Butler* to be more persuasive.

[3] Indeed, assuming *arguendo* Sparenberg's transfer and decrease in pay were separate, discrete events, Sparenberg would still present a colorable claim that his decrease in pay constituted an FMLA violation.  The FMLA provides that, on return from FMLA leave, the employee is entitled "to be restored to an equivalent position with equivalent employment benefits, *pay*, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1) (emphasis added). Accordingly, because Sparenberg has presented a genuine dispute of material fact as to whether his taking of FMLA leave contributed to his decrease in pay, even if the transfer itself was

**B. This court did not err in finding Eagle Alliance potentially liable for reassigning Sparenberg at the request of its client.**

Eagle Alliance also challenges this court's holding that it was potentially liable for reassigning Sparenberg at the request of its client, NSOC. As support, Eagle Alliance avers that attendance is a bona fide occupational qualification ("BFOQ") permitting it to make employment decisions based on attendance. Eagle Alliance, however, presents no controlling case law requiring this court to modify its holding;[4] thus, as before, its argument is unavailing.

While I agree with Eagle Alliance's contention that reliable attendance is an important requirement of working at NSOC, (*see* ECF No. 45, p. 9), so too is attendance an important requirement for the vast majority of other jobs. To recognize attendance as a BFOQ would significantly weaken the FMLA's protections by allowing employers to punish employees for the taking of FMLA leave whenever employers can claim an attendance-based BFOQ. Indeed, given that the FMLA was enacted, in part, to remedy "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods," 29 U.S.C. § 2601(a)(4), immunizing attendance-based discrimination threatens to swallow the FMLA's protections whole.

---

excluded by the FMLA's statute of limitations, Sparenberg would still retain an FMLA claim for his decrease in pay.

[4] Eagle Alliance misreads the Fourth Circuit's unpublished opinion in *Ranade v. BT Americas, Inc.*, 581 F. App'x 182 (4th Cir. 2014) (per curiam). There, in circumstances distinguishable from the ones here, a plaintiff's doctor cleared the plaintiff to return to her position full-time; however, the plaintiff still contended that, despite the doctor's finding, the FMLA entitled her to a part-time schedule. The Fourth Circuit noted that, pursuant to the FMLA's regulations for intermittent leave (which are not applicable in the instant case), the employer was permitted to work with employee to arrive at "a schedule for such leave that meets the employee's needs without unduly disrupting the employer's operations." 581 F. App'x at 184–85 (internal quotation marks omitted) (citing 29 C.F.R. § 825.302(f)). However, here, Sparenberg has not insisted on a part-time schedule after taking FMLA leave; instead, the question is whether Eagle Alliance has interfered with and retaliated against his taking of leave. Accordingly, *Ranade* does not lend support to Eagle Alliance's argument.

The FMLA's statutory scheme supports this reading of the statute. In contrast to other anti-discrimination statutes like the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, which do not protect employees who are unqualified to perform job requirements, the FMLA is designed to protect an employee from being subject to an adverse employment action upon return from leave during which time the employee was "unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Here, although Sparenberg may not have been able to perform a requirement of his position (*i.e.*, reliable attendance) while taking FMLA leave, as a matter of law, the FMLA proscribed any adverse action against Sparenberg for his failure to meet the requirements of his position during that time.[5] *See* 29 U.S.C. § 2615. Accordingly, attendance could not have been a BFOQ for the period of time Sparenberg was sheltered by the FMLA's protections and this court did not err in finding Eagle Alliance potentially liable for reassigning Sparenberg at the request of its client.[6]

---

[5] The FMLA is workable for employers because Congress cabined its protections—if, after an employee has taken their allotted FMLA leave, "the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c). In essence, the FMLA allows employers to fire or transfer employees who fail to meet attendance requirements, but only when they are no longer protected by the FMLA.

[6] Even if, as Eagle Alliance suggests, attendance is a BFOQ under the FMLA, persuasive authority suggests that an employee fails to meet such a requirement only when they amass "unscheduled and unpredictable, but cumulatively substantial, absences or [assert] a right to take unscheduled leave at a moment's notice for the rest of [their] career." *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 675–76 (8th Cir. 2010) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (internal quotation marks and citations omitted); *cf. Scott v. Sebelius*, No. 11-2865, 2013 WL 709765, at *6 n.5 (D. Md. Feb. 25, 2013) (holding that defendant was justified in firing plaintiff because, even excluding leave covered by the FMLA, "plaintiff was absent over 70% of the hours when she was expected to be at work"). There is no allegation that either scenario applies here.

## CONCLUSION

For the reasons set forth above, Eagle Alliance's motion to reconsider (ECF No. 45) is denied.

|  |  |
|---|---|
|     2/4/2016 |     /s/ |
| Date | J. Frederick Motz |
|  | United States District Judge |